FILED
United States Court of Appeals
Tenth Circuit

February 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

CARLOS RAMOS-CARRILLO, a/k/a
Chapin,

        Defendant-Appellant.

No. 12-1120
(D.C. No. 1:09-CR-00056-PAB-10)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

Carlos Ramos-Carrillo managed an apartment building where the head of a

local drug ring rented space and conducted his trade. Mr. Ramos-Carrillo helped out

with that trade in various ways: he acquired apartments for storing drugs and guns,

he provided surveillance through on-site cameras and foot patrols, and he alerted the

ringleader when police showed up. Ultimately, Mr. Ramos-Carrillo and eleven

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

others found themselves indicted for their involvement in the business. All but Mr. Ramos-Carrillo entered guilty pleas. At trial, a jury found Mr. Ramos-Carillo guilty of conspiracy to distribute and possession with intent to distribute methamphetamine.

On appeal, Mr. Ramos-Carrillo argues that the indictment against him should be dismissed. He claims the grand jury considering his case heard false testimony that he was a member of MS-13, a nationwide street gang. And in his view, that testimony was so prejudicial it prevented the grand jury from exercising its independent judgment and denied him a fundamentally fair proceeding. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (a nonconstitutional grand jury error may result in dismissal if "the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations" (internal quotation marks omitted)).

In fact, however, the grand jury was told no such thing. Witnesses testified that *other* targets were members of MS-13. But Mr. Ramos-Carrillo was never identified as an MS-13 member; no false information was provided to the grand jury about him. To this, Mr. Ramos-Carrillo replies that the proceedings were still unfair. Even allowing the grand jury to hear testimony about the MS-13 membership of *other* targets prejudiced him: the public hates gangs, he says, and the prosecution fed that hatred by recounting general background information about MS-13 activities in other locales.

We don't doubt the information the prosecution presented was powerful, and we even assume it may have exceeded what was strictly necessary for the case at hand. But there is no question that the evidence was directed to *other* defendants. Neither is there any question the MS-13 discussion played (at the very most) only a minor role in the grand jury proceeding: the district court found that 95% of the grand jury testimony focused on the specific drug transactions and activities of the defendants. R. vol. 1, at 688. And that case-specific testimony, including testimony about Mr. Ramos-Carrillo's personal involvement in illegal activities, was substantial. Indeed, Mr. Ramos-Carrillo doesn't now contest any of it. On this record, we have a hard time faulting the district court's assessment that there's insufficient "reason to believe that the grand jury's decision to indict was substantially influenced (or its independent judgment substantially impaired)." Neither are we directed to authority that might compel such a conclusion.

In an entirely different vein, Mr. Ramos-Carrillo claims the government deliberately prompted one of his co-conspirators to testify (falsely) at trial that Mr. Ramos-Carrillo delivered drugs to the ringleader's apartment. *See* R. Supp. vol. 2, at 389-90. There is, however, simply no evidence in the record before us that the government knew the witness would testify falsely, let alone that the government intended to front false testimony. *See Johnson v. Mullen*, 505 F.3d 1128, 1154 (10th Cir. 2007) (upholding a conviction where the record did not indicate that prosecution knew allegedly perjured testimony was false). Mr. Ramos-Carrillo

- 3 -

replies that, at the very least, the government committed reversible error by failing to correct the false testimony. But that theory is also refuted by the record. The prosecutor immediately corrected the false testimony, pressing the witness until he confessed his false testimony (a fact that seems, if anything, to belie the suggestion the government deliberately wished to present false testimony in the first place). R. Supp. vol. 2, at 390-91.

Finally, Mr. Ramos-Carrillo says the district court failed to answer the jury's questions regarding nearly 400 grams of cutting agent recovered from the apartment. During deliberations, the jury initially asked what amounts it should consider in determining the quantity of drugs — those actually seized or amounts discussed in telephone conversations. The judge answered that the jury could consider the amounts mentioned in telephone conversations. R. vol. 1, at 885-86. Then the jury sent another note asking, "What about the cutting agent?? Also - can the quantity be considered as intent to distribute or conspired to possess." *Id.* at 887. While the court and counsel were busy formulating an appropriate response to these latest questions, the jury returned with a verdict. On the verdict form, the jury "unanimously [found] the defendant conspired to distribute or conspired to possess with the intent to distribute . . . 50 grams or more of methamphetamine (actual) [and] 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine." *Id.* at 871-72. After trial, Mr. Ramos-Carrillo filed a motion for new trial asserting error in the district court's failure to address the cutting agent in

answering these questions. He argued that the court should have informed the jury that the cutting agent "should not be included in determining the quantity of methamphetamine since it did not contain a detectable amount of methamphetamine." *Id.* at 882. Now on appeal Mr. Ramos-Carrillo pursues a slightly different theory, arguing that the district court erred in failing to explain how the quantity of the cutting agent might mitigate his *intent* to distribute methamphetamine.

We cannot agree. Even assuming Mr. Ramos-Carrillo preserved the argument he now wishes to pursue, we may review the district court's denial of a new trial motion at best only for abuse of discretion. *United States v. McKeighan*, 685 F.3d 956, 973 (10th Cir.), *cert denied*, 133 S. Ct. 632 (2012). Here, the jury reached a verdict before the court could answer its latest question. Perhaps the court could have forced it to wait for an answer, but it seems equally apparent the jury was able to resolve its own question without the court's assistance. After all, the jury expressly found Mr. Ramos-Carrillo possessed an *intent* to distribute "50 grams or more of methamphetamine (actual)" and "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine." This verdict suggests the jury well understood the existence of cutting agent evidence and the light it might shed on Mr. Ramos-Castillo's *mens rea*. In these circumstances, we are unable to see how the district court's acceptance of the verdict before answering the jury's question and its subsequent denial of a new trial amounted to an abuse of

discretion.  Neither, once again, has Mr. Ramos-Castillo identified any authority that might compel a different result.

The judgment of the district court is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge